UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA | Criminal No.  3:20-cr-00175 - RNC |
| v. | VIOLATIONS: |
| JPMORGAN CHASE & CO. | 18 U.S.C. § 1343 (Wire Fraud) |

INFORMATION

The United States of America charges:

COUNT ONE
(Wire Fraud)

1.    From approximately March 2008 until August 2016 ("Precious Metals Relevant Period"), in the District of Connecticut, and elsewhere, the defendant, JPMORGAN CHASE & CO., knowingly and with the intent to defraud, having devised and intending to devise a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, transmitted and caused to be transmitted certain writings, signs, signals, pictures, and sounds by means of wire communication in interstate and foreign commerce for the purpose of executing the scheme and artifice to defraud.

2.    During the Precious Metals Relevant Period, JPMORGAN CHASE & CO., together with its subsidiaries including JPMorgan Chase Bank, N.A. ("JPMC") and its affiliates, operated a commodities trading business, which included the trading of gold, silver, platinum, and palladium ("precious metals") futures contracts and options, through its Global Commodities Group with precious metals traders that worked in offices in New York, Singapore, and London,

England and operated as part of a single, cohesive global unit or "desk" (the "Precious Metals Desk").

3.      Members of the Precious Metals Desk during the Precious Metals Relevant Period included (a) Gregg Smith (who has been charged elsewhere), who worked in New York; (b) Michael Nowak (who has been charged elsewhere), who worked in New York and London; (c) Jeffrey Ruffo (who has been charged elsewhere), who worked in New York; (d) Christopher Jordan (who has been charged elsewhere), who worked in New York; (e) Christian Trunz (who has previously pled guilty), who worked in New York, Singapore, and London; (f) John Edmonds (who has previously pled guilty), who worked in New York; (g) Trader 1, who worked in New York; (h) Trader 2, who worked in London; (i) Trader 3, who worked in New York and London; and (j) Trader 4, who worked in London.

4.      During the Precious Metals Relevant Period, Smith, Nowak, Jordan, Trunz, Edmonds, Traders 1 through 4, and one or more other traders on the Precious Metals Desk (collectively, the "Subject PM Traders") and Ruffo and one or more other salespeople on the Precious Metals Desk (together with the Subject PM Traders, the "Subject PM Desk Members"), all of whom were employed by JPMORGAN CHASE & CO. through JPMC and its affiliates, engaged in fraudulent and manipulative trading practices in connection with the purchase and sale of precious metals futures contracts on and subject to the rules of a registered entity, namely the New York Mercantile Exchange, Inc. ("NYMEX") and Commodity Exchange, Inc. ("COMEX"), which were exchanges operated by the CME Group, Inc. ("CME Group").

5.      In furtherance of the scheme, on tens of thousands of occasions, the Subject PM Traders knowingly and intentionally placed orders to buy and sell precious metals futures contracts with the intent to cancel those orders before execution ("Deceptive PM Orders"), including in an

attempt to profit by deceiving other market participants through false and fraudulent pretenses and representations concerning the existence of genuine supply and demand for precious metals futures contracts.

6.     By placing Deceptive PM Orders, the Subject PM Traders intended to inject false and misleading information about the genuine supply and demand for precious metals futures contracts into the markets, and to deceive other participants in those markets into believing something untrue, namely that the visible order book accurately reflected market-based forces of supply and demand.  This false and misleading information was intended to, and at times did, trick other market participants, including competitor financial institutions and proprietary traders, into reacting to the apparent change and imbalance in supply and demand by buying and selling precious metals futures contracts at quantities, prices, and times that they otherwise likely would not have traded.

7.     The Deceptive PM Orders placed by the Subject PM Traders were transmitted electronically via international and interstate wire communications from New York, London, and Singapore to computer servers operated by the CME Group in and around Chicago and Aurora, Illinois.

8.     In executing the scheme to defraud in connection with the purchase and sale of precious metals futures contracts and the placement of Deceptive PM Orders, the Subject PM Desk Members were acting within the scope of their employment as employees of JPMC and its affiliates, and as agents of JPMORGAN CHASE & CO., and with the intent, at least in part, to benefit JPMORGAN CHASE & CO.

9.     For purposes of executing the scheme to defraud, on or about on June 22, 2016, at 3:14:33.935 a.m. (Eastern Daylight Time), Trunz placed an order to sell 20 platinum futures

contracts at $981.80.  Trunz subsequently was able to fill nine of those 20 contracts.  Then, 1.991 second later, beginning at 3:14:35.926 a.m., Trunz placed a series of eight Deceptive PM Orders to buy five contracts each (40 contracts total) at prices from $981.20 to $981.60 with the intent to create the illusion of demand, deceive other market participants, and artificially move the market price higher.  Next, 594 milliseconds later, beginning at 3:14:36.520 a.m., four of the twenty contracts in his order to sell were filled.  Last, 886 milliseconds after the last contract was filled, beginning at 3:14:37.407 a.m., Trunz canceled his Deceptive PM Orders in their entirety.

10.     In total, during the Precious Metals Relevant Period, the Subject PM Desk Members' fraudulent and manipulative trading activity involving the placement of Deceptive PM Orders directly and proximately caused millions of dollars in losses to other participants in the markets for precious metals futures contracts.

All in violation of Title 18, United States Code, Section 1343.

<u>COUNT TWO</u>
(Wire Fraud)

11.     From approximately April 2008 until January 2016 (the "U.S. Treasuries Relevant Period"), in the District of Connecticut, and elsewhere, the defendant, JPMORGAN CHASE &  CO., knowingly and with the intent to defraud, having devised and intending to devise a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, transmitted and caused to be transmitted certain writings, signs, signals, pictures, and sounds by means of wire communication in interstate and foreign commerce for the purpose of executing the scheme and artifice to defraud.

12.     During the U.S. Treasuries Relevant Period, JPMORGAN CHASE & CO., together with its subsidiaries including J.P. Morgan Securities LLC ("JPMS") and its affiliates, ran its U.S. Treasuries business, which included the trading of U.S. Treasury notes, bonds, and futures, through

its Global Rates and Rates Exotics group with traders that worked in New York, London, and Tokyo, Japan and operated as a part of a single, cohesive global unit or "desk" (the "U.S. Treasuries Desk").

13.     Members of the U.S. Treasuries Desk during the U.S. Treasuries Relevant Period included Traders A through D, who worked in New York, and Trader E, who worked in London.

14.     During the U.S. Treasuries Relevant Period, Traders A through E and one or more other members of the U.S. Treasuries Desk (collectively, the "Subject UST Traders") engaged in a scheme to defraud in connection with the purchase and sale of (i) U.S. Treasuries for future delivery, including futures contracts for the five-year U.S. Treasury note, ten-year U.S. Treasury note, and 30-year U.S. Treasury bond, as well as the Ultra U.S. Treasury bond futures contracts (the "Ultrabond") (all four products, collectively, "U.S. Treasury futures contracts"), on and subject to the rules of a registered entity, specifically the Chicago Board of Trade ("CBOT"), which was an exchange operated by the CME Group, and (ii) U.S. Treasury notes and bonds in the secondary cash market (collectively (i) and (ii), "U.S. Treasury Products").

15.     In furtherance of the scheme, on thousands of occasions, the Subject UST Traders knowingly and intentionally placed orders to buy and sell U.S. Treasury Products with the intent to cancel those orders before execution (the "Deceptive UST Orders"), including in an attempt to profit by deceiving other market participants through false and fraudulent pretenses and representations concerning the existence of genuine supply and demand for U.S. Treasury Products.

16.     By placing the Deceptive UST Orders, the Subject UST Traders intended to inject false and misleading information about the genuine supply and demand for U.S. Treasury Products into the respective markets, and to deceive other participants in those markets into believing

something untrue, namely that the visible order book accurately reflected market-based forces of supply and demand.  This false and misleading information was intended to, and at times did, trick other market participants, including competitor financial institutions and proprietary traders, into reacting to the apparent change and imbalance in supply and demand by buying and selling U.S. Treasury Products at quantities, prices, and times that they otherwise likely would not have traded.

17.     The Deceptive UST Orders for U.S. Treasury futures contracts placed by the Subject UST Traders were transmitted electronically via international and interstate wire communications to computer servers operated by the CME Group in and around Chicago and Aurora, Illinois.

18.     The Deceptive UST Orders for U.S. Treasury notes and bonds placed by the Subject UST Traders were transmitted electronically via international and interstate wire communications to computer servers operated by trading platforms, including certain platforms with servers located in New York and New Jersey.

19.     In executing the scheme to defraud in connection with the purchase and sale of U.S. Treasury Products and the placement of Deceptive UST Orders, the Subject UST Traders were acting within the scope of their employment as employees of JPMS and its affiliates, and as agents of JPMORGAN CHASE & CO., and with the intent, at least in part, to benefit JPMORGAN CHASE & CO.

20.     For purposes of executing the scheme to defraud, on January 6, 2016, at 10:18:45.456 a.m. (Eastern Daylight Time), Trader A placed an order to sell 200 U.S. Treasury bond futures contracts at $155.31250.  Next, 4.060 seconds later, Trader A placed a Deceptive UST Order to buy 200 U.S. Treasury bond futures contracts at $155.28120 with the intent to create the illusion of demand, deceive other market participants, and artificially move the market price

higher.  Then, 1.757 seconds later, Trader A's order to sell was filled in its entirety.  Last, 1.039 seconds later, Trader A cancelled his Deceptive UST Order in its entirety.

21.    In total, during the U.S. Treasuries Relevant Period, the Subject UST Traders' fraudulent and manipulative trading activity involving the placement of Deceptive UST Orders directly and proximately caused millions of dollars in losses to other participants in the markets for U.S. Treasury Products, including millions of dollars in losses to participants in the U.S. Treasury futures market and millions of dollars in losses to participants in the secondary cash market for U.S. Treasury notes and bonds.

All in violation of Title 18, United States Code, Section 1343.


*Daniel S. Kahn*
_____
DANIEL S. KAHN
ACTING CHIEF, FRAUD SECTION
CRIMINAL DIVISION
U.S. DEPARTMENT OF JUSTICE


_____
JOHN H. DURHAM
UNITED STATES ATTORNEY
DISTRICT OF CONNECTICUT


_____
AVI PERRY
ASSISTANT CHIEF

MATTHEW F. SULLIVAN
TRIAL ATTORNEY


_____
JONATHAN FRANCIS
ASSISTANT U.S. ATTORNEY